UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-cv-62313-MORENO

NANCY E. LOPEZ FLORES,

    Plaintiff,

vs.

SANOFI US SERVICES INC.,
SANOFI-AVENTIS U.S. LLC,
SANOFI S.A., CHATTEM, INC.; and
BOEHRINGER INGELHEIM
PHARMACEUTICALS, INC.,

    Defendants.
_____/

**DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

Defendants Sanofi US Services Inc., Sanofi-Aventis U.S. LLC, and Chattem, Inc. (collectively, "Sanofi") and Defendant Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI"), by and through undersigned counsel, file this Joint Motion to Dismiss Plaintiff's Complaint and in furtherance thereof, state as follows:

**I.    Introduction**

In her rush to the courthouse—filing this Complaint just four days after the U.S. Food and Drug Administration ("FDA") announced on September 13, 2019 that it was investigating a citizen petition's claims that the medication Zantac may contain a carcinogen—Plaintiff lacks the factual foundation needed to satisfy basic pleading requirements. Instead, her Complaint just parrots the claims in the citizen petition, all of which are still under intense scrutiny by FDA, and then pleads in a blunderbuss fashion that all Defendants are liable under vaguely articulated legal theories.

As a result, Plaintiff's Complaint is deficient on numerous grounds. *First*, Plaintiff impermissibly lumps together her allegations throughout the Complaint against all Defendants and, with respect to her negligence and strict liability claims, alleges a laundry list of potential theories of liability. This shotgun pleading style violates Federal Rule of Civil Procedure 8, as it fails to give Defendants adequate notice of the claims against them and the grounds upon which each claim rests. *Second*, Plaintiff fails to state her fraud-based claims with sufficient particularity to meet the heightened pleading standards of Fed. R. Civ. P. 9(b). Indeed, Plaintiff's vague and undifferentiated approach to her Complaint makes her fraud-based claims particularly deficient. *Third*, Plaintiff's breach of warranty claims fail because she lacks privity, has not provided pre-suit notice, and has not alleged required elements of her claims. *Finally*, Plaintiff provides no basis in statute or contract to support her request for attorneys' fees. Accordingly, Defendants move to dismiss all causes of action in Plaintiff's Complaint.[1]

## II.     Factual and Procedural Background

FDA first approved ranitidine in 1983, and the drug has been used for decades to treat stomach ulcers, gastroesophageal reflux disease ("GERD"), and other conditions of the stomach and esophagus. Compl., D.E. 1, ¶¶ 18-19.[2] The World Health Organization's List of Essential

---

[1]     Plaintiff's claims also fail on the merits, for reasons Defendants will demonstrate at an appropriate point in this case.

[2]     Defendants cite to the allegations in the Complaint for the purposes of this Motion to Dismiss, but do not concede that Plaintiff's allegations are true for any other purpose. *See also, e.g.*, Drugs@FDA:     FDA Approved Drug Products, New Drug Application 01965 https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=BasicSearch.process (last visited Oct. 28, 2019) (providing the approval dates and labels for one form of Zantac). "A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgement," in particular "public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'" *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (quoting Fed. R. Evid. 201(b)); *see also, e.g.*, *Markland v. Insys Therapeutics, Inc.*, 270

Medicines, a selection of drugs the global organization has determined are "the most efficacious, safe and cost–effective medicines for priority conditions," lists ranitidine as an antiulcer medicine.[3] Zantac is the brand name for ranitidine, and the Complaint alleges that Defendants are current or past manufacturers of the drug. *Id.* ¶¶ 14, 16. There are also many generic versions of ranitidine on the market. *Id.* ¶ 27.

On September 13, 2019, Valisure, LLC, an online pharmacy, submitted a citizen petition to FDA suggesting a potential link between ranitidine and N-Nitrosodimethylamine ("NDMA"), a substance deemed possibly carcinogenic in humans. *Id.* ¶¶ 32-34, *see also id.* Ex. A. The Valisure petition describes certain tests Valisure claims to have undertaken to investigate whether ranitidine contains, or can generate, NDMA under various conditions. *Id.* ¶¶ 32-35. In response to Valisure's citizen petition, FDA is in the midst of evaluating the claims about NDMA levels in Zantac. *Id.* Ex. A.[4] Rather than relying on Valisure's methods, FDA is conducting its own testing to "evaluat[e] whether the low levels of NDMA in ranitidine pose a risk to patients."[5] Plaintiff filed her Complaint, alleging that Zantac caused her to contract breast cancer, on September 17, 2019, just four days after Valisure filed its petition with FDA. *See id.*

---

F. Supp. 3d 1318, 1321 n.3 (M.D. Fla. 2017) (considering FDA records available to the public on FDA's website on a motion to dismiss); *Leroy v. Medtronic, Inc.*, No. 3:14-cv-284/MCR/CJK, 2015 WL 4600880, at *6 (N.D. Fla. July 29, 2015) (taking judicial notice of an FDA press release on the agency's website).

[3] World Health Organization Model List of Essential Medicines (2019), https://apps.who.int/iris/bitstream/handle/10665/325771/WHO-MVP-EMP-IAU-2019.06-eng.pdf?ua=1.

[4] *See, e.g.*, U.S. Food & Drug Admin., FDA provides update on testing of ranitidine for NDMA impurities (Oct. 2, 2019), https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-ndma-zantac-ranitidine.

[5] U.S. Food & Drug Admin., Statement alerting patients and health care professionals of NDMA found in samples of ranitidine (Sept. 13, 2019), https://www.fda.gov/news-events/press-announcements/statement-alerting-patients-and-health-care-professionals-ndma-found-samples-ranitidine.

Plaintiff's Complaint lacks specific allegations regarding her use of Zantac and specific injury, apart from alleging that she began taking Zantac in or around 1995, *id.* ¶ 5, that she was diagnosed with cancer in 2012 and 2018, *id.* ¶¶ 6-7, and that Zantac caused her cancer, *id.* ¶ 69. Plaintiff's Complaint also fails to direct specific allegations against Sanofi or BIPI individually, and instead throughout the Complaint lumps her allegations together against all Defendants.

On the basis of these broad allegations, Plaintiff pursues causes of action for negligence and strict products liability, although she fails to specify the product liability theory (failure to warn, design defect, or manufacturing defect) underlying those claims. Plaintiff also asserts causes of action for breach of express and implied warranties, and various theories of fraud against all Defendants. As discussed below, all of Plaintiff's claims should be dismissed.

### III.     Legal Standard

A motion to dismiss challenges the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss, courts must accept as true the complaint's well-pleaded factual allegations but not its legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of the cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555); *see also GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012) (*Iqbal* "necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim"). And "[w]here a cause of action sounds in fraud, the heightened standard in Federal Rule of Civil Procedure 9(b) also must be satisfied." *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1297 (S.D. Fla. 2017) (Moreno, J.).

## IV.   Argument

### A.   Plaintiff's Complaint Is a Shotgun Pleading that Violates Fed. R. Civ. P. 8.

#### 1.   Plaintiff's Complaint Fails to Direct Specific Allegations at Individual Defendants.

All of Plaintiff's claims are defective because they engage in impermissible group pleading. A complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" is an impermissible shotgun pleading. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) (footnote omitted).

Plaintiff's Complaint includes 199 allegations, but mentions Sanofi by name in only ten, Compl. ¶¶ 9-15, 21, 46, 49; and BIPI by name in only three, *id.* ¶¶ 16, 21, 22. And none of those allegations asserts that Sanofi or BIPI engaged in any specific conduct that would support the causes of action that Plaintiff pleads. *See id.*

Rather, nearly every substantive allegation of the Complaint is made collectively against all "Defendants," without making any effort to differentiate between Sanofi and BIPI or their alleged individual conduct, despite the fact that Sanofi and BIPI are distinct entities that distributed Zantac at different times. *See, e.g.*, *id.* ¶ 57 ("Defendants knew of the significant risk of cancer that could result from the use of Ranitidine products, including Zantac, but Defendants did not adequately and sufficiently warn consumers . . . ."); *id.* ¶ 64 ("As a result of Defendants' action and inactions as outlined herein, Plaintiff was injured due to Plaintiffs ingestion of Zantac, which caused Plaintiff to suffer from cancer and any and all sequelae."); *id.* ¶ 72 ("Defendants failed to exercise ordinary care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of Ranitidine products, including Zantac, into interstate commerce in that Defendants knew or should

have known that using Ranitidine products, including Zantac, could proximately cause Plaintiff's injuries."); *id.* ¶¶ 6, 103, 134 (additional collective and vague allegations).

Missing from the Complaint are any specific factual allegations as to what any particular Defendant allegedly did wrong. As a result, the Complaint fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," *Weiland*, 792 F.3d at 1323, as Rule 8 requires. *See also Petrovic v. Princess Cruise Lines, Ltd.*, No. 12-21588-CIV, 2012 WL 3026368, at *5 (S.D. Fla. July 20, 2012) ("It is not for the court or the parties to speculate as to the identity of the Defendants these allegations are levied against as the burden rests on the plaintiff to provide fair notice of the grounds for the claims made against each of the defendants." (citation and internal quotation marks omitted)). Accordingly, all causes of action in Plaintiff's shotgun Complaint should be dismissed. *See, e.g.*, *Kaufman v. Pfizer Pharm., Inc.*, No. 1:02-CV-22692, 2010 WL 9438673, at *3 (S.D. Fla. Nov. 23, 2010) (dismissing "impermissible shotgun pleading" that *inter alia*, made "general allegations against defendants in each of the twelve counts but fail[ed] to distinguish between Pfizer and Wyeth and fail[ed] to explain the basis of Pfizer's liability," and failed to "allege specific facts about the duty each defendant owed to her . . . [or] how each defendant breached its duty and how the breach caused her injuries").[6]

---

[6] *See also Diamond Resorts Int'l, Inc. v. U.S. Consumer Attorneys, P.A.*, No. 18-80311-CIV, 2018 WL 6621363, at *3 (S.D. Fla. Oct. 26, 2018) ("Complaints that 'lump' multiple defendants together in a single cause of action fail to satisfy *Twombly*, *Iqbal*, and the Federal Rules of Civil Procedure because they lack the required specificity and plausibility to notify both the court and defendants of the claims asserted against them."); *id.* ("Courts within this district routinely dismiss complaints that 'lump' multiple defendants together."); *Joseph v. Bernstein*, No. 13-24355-CIV, 2014 WL 4101392, at *3 (S.D. Fla. Aug. 19, 2014), *aff'd*, 612 F. App'x 551 (11th Cir. 2015) ("When a complaint indiscriminately lumps all defendants together, it fails to comply with Rule 8."); *Steen Grp. LLC v. Ltd.*, No. 13-60070, 2013 WL 12089956, at *3 (S.D. Fla. 2013) (dismissing complaint that did "not clearly distinguish which Defendant is liable for which alleged breach or why," reasoning that a complaint "must be specific, putting each Defendant on notice and informing each Defendant as to under which capacity they are allegedly being held liable"); *Lane*

### 2. The First and Second Causes of Action Should Separately Be Dismissed as Shotgun Pleadings.

Plaintiff's negligence and strict product liability claims are impermissible shotgun pleadings for another reason: the Complaint fails to specify whether Plaintiff is pursuing a failure-to-warn, design defect, or manufacturing defect theory, or to tie her factual allegations to any such theory. Instead, the First Cause of Action alleges a laundry list of conclusory theories of liability in a single negligence claim. *See* Compl. ¶¶ 72, 74, 77. This type of "omnibus" negligence claim has been viewed as an impermissible shotgun pleading because "[e]ach theory is a separate cause of action that must be asserted independently and with supporting factual allegations." *Kercher v. Carnival Corp.*, No. CV 19-21467-CIV, 2019 WL 1723565, at *1 (S.D. Fla. Apr. 18, 2019) (collecting cases). The Second Cause of Action similarly lists claims for strict liability design defect, manufacturing defect, and failure to warn, without attempting to differentiate between the allegations supporting each claim in any way. Not surprisingly, given the prematurity of this lawsuit, Plaintiff lacks the scientific foundation to plead what she believes is wrong with the drug. Plaintiff's failure to articulate a clear legal theory and the factual allegations that support it accordingly dooms her negligence and strict liability claims.

### B. Plaintiff's Fraud-Based Claims Fail to Meet Rule 9(b)'s Heightened Pleading Standard.

A cause of action that sounds in fraud must satisfy Rule 9(b)'s heightened pleading standard. *Melton*, 243 F. Supp. 3d at 1297. For two reasons, Plaintiff's fraud-based claims in the

---

*v. Capital Acquisitions & Mgmt. Co.*, No. 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the [plaintiff's] Complaint fails to satisfy the minimum standard of Rule 8." (citation omitted)).

Fifth, Sixth, Seventh, and Eighth Causes of Action fail to meet Rule 9(b)'s heightened pleading standards.[7]

*First*, Plaintiff's boilerplate allegations fail to allege fraud with sufficient particularity. "Under Rule 9(b), 'a party must state with particularity the circumstances constituting fraud or mistake,' although 'conditions of a person's mind,' such as malice, intent, and knowledge may be alleged generally." *Melton*, 243 F. Supp. 3d at 1297 (quoting Fed. R. Civ. P. 9(b)). In particular, "[t]o comply with Rule 9(b), a plaintiff must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud.'" *Cardenas v. Toyota Motor Corp.*, No. 18-22798-CIV, 2019 WL 4777891, at *2 (S.D. Fla. Sept. 30, 2019) (Moreno, J.) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

Here, Plaintiff fails to allege the "'who, what, when, where, and how' pertaining to the underlying fraud." *Id.* (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)). Plaintiff does not allege the precise statements, documents, misrepresentations, or omissions made by Sanofi or BIPI. She also has not alleged the time, place, and person responsible for Sanofi or BIPI's statements; the content and manner in which Sanofi or BIPI's statements misled Plaintiff; or what Sanofi or BIPI gained by the alleged fraud. *See id*.

For example, she does not allege whether she took Zantac by prescription, in which case the relevant question under the learned intermediary doctrine is what alleged misrepresentations were made to her doctor. *See, e.g.*, *Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 608-

---

[7] All of these causes of action—fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and fraud and deceit—sound in fraud. *See Arnold v. McFall*, 839 F. Supp. 2d 1281, 1289 (S.D. Fla. 2011).

8

09 (11th Cir. 2008) ("Florida law applies the learned intermediary doctrine, whereby the duty to warn flows from the drug manufacturer to the physician, and not the ultimate consumer."). Nor does she allege reliance on particular advertising or product packaging; she does not even identify the specific dates she claims to have used the product or where she purchased it. Given that rigorous evaluation and testing of the product is still underway, the Complaint also does not and cannot identify what information she claims was fraudulently omitted. In light of Plaintiff's failure to plead her fraud-based claims with sufficient particularity, these claims should be dismissed.

*Second*, Plaintiff's Complaint fails to make specific and separate allegations of fraud against Sanofi or BIPI. "When a fraud claim involves multiple defending parties, the claimant must make specific and separate allegations against each defendant." *Kaufman*, 2010 WL 9438673, at *7; *see also Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682, at *4 (S.D. Fla. Jan. 3, 2002) ("Where claims of fraud are asserted against multiple defendants, Rule 9(b) has been interpreted to require the plaintiff to differentiate the allegations and to inform each defendant separately of the allegations of its participation in the fraud." (citing *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)). "At bottom, the purpose of particularity pleading is to alert defendants to their precise misconduct and protect them against baseless charges of fraudulent behavior." *Cardenas*, 2019 WL 4777891, at *2. Here, given Plaintiff's failure to make ***any*** individual allegations regarding Sanofi or BIPI, *see supra* Sec. IV.A.1, let alone specific and separate allegations of fraudulent conduct sufficient to satisfy Rule 9(b), Plaintiff's Fifth, Sixth, Seventh, and Eighth Causes of Action should be dismissed.

    **C.**    **Plaintiff's Claims for Breach of Express and Implied Warranties Should Be Dismissed for Warranty-Specific Pleading Defects.**

Plaintiff's Third and Fourth Causes of Action, claims for breaches of express and implied warranties, should be dismissed for three additional reasons.

*First*, Plaintiff's warranty claims should be dismissed because Plaintiff failed to provide Sanofi or BIPI with pre-suit notice as required by Florida law. Florida Statute Section 672.607 provides that "[t]he buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Fla. Stat. § 672.607(3)(a). "This notice requirement is a valid precondition of imposing liability on a seller of goods for breach of warranty." *Hummel v. Tamko Bldg. Prod., Inc.*, 303 F. Supp. 3d 1288, 1298 (M.D. Fla. 2017) (citations and quotation marks omitted). Plaintiff's failure to provide Sanofi or BIPI with any pre-suit notice before filing this action warrants dismissal. *E.g.*, *Meyer v. Colavita USA Inc.*, No. 10-61781-CIV, 2011 WL 13216980, at *5 (S.D. Fla. Sept. 13, 2011).

*Second*, both of Plaintiff's warranty claims should be dismissed for lack of privity. "When Florida adopted the doctrine of strict liability for defective products it limited liability for breach of express or implied warranty to individuals in privity with the manufacturer." *Amron v. Glaxosmithkline Consumer Healthcare, L.P.*, No. 11-20068-CIV, 2011 WL 13223558, at *3 (S.D. Fla. June 15, 2011); *see also Kaufman*, 2010 WL 9438673, at *6 ("It is well-settled Florida law that an end user cannot assert a claim for breach of implied or express warranty in the absence of contractual privity between the plaintiff and the manufacturer." (citing cases)). Because Plaintiff does not allege contractual privity with Sanofi or BIPI, her claims of breach of express and implied warranties should be dismissed.[8]

---

[8] *See, e.g.*, *Amron*, 2011 WL 13223558, at *3 (dismissing breach of express and implied warranty claims for lack of privity); *Kaufman*, 2010 WL 9438673, at *7 ("Plaintiff concedes at the status conference that she did not purchase the drugs at issue directly from Defendant. In fact, she alleges that her doctor prescribed her the drugs. Thus, Plaintiff cannot demonstrate privity of contract. District Courts routinely dismiss breach of warranty claims at the motion to dismiss stage, even in the absence of an admission.").

*Third*, Plaintiff's express warranty claim should also be dismissed given Plaintiff's failure to allege (1) an assertion of fact by Sanofi or BIPI of which Plaintiff was ignorant prior to purchasing Zantac, or (2) that Plaintiff justifiably relied on any such assertion. Such allegations are necessary for a breach of express warranty claim to lie. *See Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 15-24363-CIV, 2018 WL 4932871, at *7 (S.D. Fla. Apr. 23, 2018) ("[A]n express warranty is generally considered to arise only where the seller asserts a fact of which the buyer is ignorant prior to the beginning of the transaction and on which the buyer justifiably relies as part of the basis of the bargain." (quoting *Thursby v. Reynolds Metals Co.*, 466 So. 2d 245, 250 (Fla. 1st DCA 1984)). Here, just as with her fraud claims, *see supra* Sec. IV.B, Plaintiff has not pleaded what statements any particular Defendant allegedly made to her on which she relies. Plaintiff's failure to plead these elements of an express warranty claim requires dismissal of that claim.

### D. Plaintiff's Request for Attorneys' Fees Should Be Dismissed.

Plaintiff's Complaint seeks an award of attorneys' fees. Compl. at 37. But "[p]revailing parties in litigation may only receive attorneys' fees when authorized by statute or a term in a contract." *Kallas v. Carnival Corp.*, No. 06-20115-CIV, 2008 WL 111064, at *1 (S.D. Fla. Jan. 8, 2008) (Moreno, J.). Here, there is no basis in statute or contract to award attorneys' fees. Therefore, Plaintiff's claim for attorneys' fees should be dismissed.

**V.     Conclusion**

Based on the foregoing, the Court should dismiss Plaintiff's Complaint.

Dated: October 31, 2019

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/* Christopher *Oprison*
Christopher Oprison, Esq.
Florida Bar No. 0122080
Primary Email: christopher.oprison@dlapiper.com
Secondary Email: monica.tucker@dlapiper.com
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131
Tel.: (305) 423-8522
Fax: (305) 437-8131

**ARNOLD & PORTER
  KAYE SCHOLER LLP**

Anand Agneshwar*
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
Email: anand.agneshwar@arnoldporter.com

Daniel S. Pariser*
Paige H. Sharpe*
Elliott C. Mogul*
601 Massachusetts Avenue, NW
Washington, DC  20001
Tel: (202) 942-5000
Fax: (202) 942-5999
Email: daniel.pariser@arnoldporter.com
paige.sharpe@arnoldporter.com
elliott.mogul@arnoldporter.com

* pro hac vice applications forthcoming

*Counsel for Defendants Sanofi US Services Inc. and Sanofi-Aventis U.S. LLC*

**WICKER SMITH O'HARA MCCOY & FORD, P.A.**

*/s/ Jordan S. Cohen*
Jordan S. Cohen, Esquire
Florida Bar No. 551872
Jcohen@wickersmith.com
515 E. Las Olas Boulevard
SunTrust Center, Suite 1400
Ft. Lauderdale, FL 33301
Phone: (954) 847-4800
Fax: (954) 760-9353

*Counsel for Defendant Boehringer Ingelheim Pharmaceuticals, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 31, 2019, a true and correct copy of the foregoing was furnished by electronic filing with the Clerk of the Court via CM/ECF, which will send notice of electronic filling to all counsel of record.

*/s/ Christopher Oprison*
Christopher Oprison, Esq.
Florida Bar No. 0122080
